UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                             :
AMERICAN FIRST FEDERAL, INC.,
                                             :        16cv3958
                    Plaintiff,
                                           :        <u>OPINION & ORDER</u>
        -against-
                                             :
SHELDON M. GORDON, *et al.*,
                                           :
                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Defendants Sheldon M. Gordon ("Sheldon") and Christine E. Gordon ("Christine") (together, the "Gordons"), and certain unidentified third parties (together, the "Defendants") move to stay the underlying action pending an appeal of a related, but separate, action in Connecticut state court (the "Connecticut Action"). Defendants' motion to stay this action is denied. However, if Defendants post a bond of $1,500,000 with the Clerk of Court by January 11, 2017, this Court will stay this action pending a resolution of the Connecticut Action.

## BACKGROUND

I.   <u>Relevant Facts</u>

        Plaintiff American First Federal, Inc. ("AFF") received the rights to a loan on which Sheldon Gordon and his company, Gordon Group Investments ("GGI"), were the obligors. (Compl. ¶¶ 13–14.) After Sheldon and GGI defaulted, AFF commenced the Connecticut Action in May 2011 for breach of the loan agreement. (Compl. ¶ 15.)

        Thereafter, Sheldon sought to negotiate a forbearance agreement with AFF. (Compl. ¶ 16.) AFF specifically demanded additional collateral in the form of Sheldon's 132,826 partnership units (the "Shares") in the Taubman Realty Group Limited Partnership

("Taubman") in exchange for an extension of the loan's maturity date. (Compl. ¶ 16.) Sheldon refused to pledge the Shares, citing their strict transfer restrictions and the adverse tax consequences that he would suffer if they were secured as collateral. (Compl. ¶ 17.) As a result, no forbearance agreement was executed. (Compl. ¶ 18.) Thereafter, AFF petitioned the Connecticut court for a Writ of Attachment (the "Writ") to secure the Shares, but Taubman refused to recognize the Writ, claiming that it did not possess the Shares and that, in any event, it was not required to make any distributions to Sheldon. (Compl. ¶ 19–20.)

After the Gordons learned of AFF's efforts to attach the Shares, they sought to transfer the Shares out of AFF's reach. (Compl. ¶ 21.) According to the Complaint, Sheldon converted the Shares into unrestricted common stock and transferred them either to Christine or unidentified third parties. (Compl. ¶¶ 24–25.) The Gordons also deposited the Shares into each of their brokerage accounts with City National Bank in Manhattan, which were then liquidated and transferred to unidentified third parties. (See Compl. ¶¶ 28–50.)

On July 10, 2015, the Connecticut court entered a judgment in favor of AFF in the amount of approximately $4.4 million (the "Judgment"). Sheldon and GGI appealed (the "Appeal"), effectively staying enforcement of the Judgment. Oral argument on the Appeal is scheduled for January 5, 2017. (See ECF No. 34.)

Since obtaining the Judgment, AFF has sought to preserve Sheldon's assets so that it can enforce the Judgment. In October 2015, AFF initiated an action in California state court alleging that the Gordons fraudulently transferred their assets.[1] (Corrected Memo. of Law in Support of Defendants' Motion to Stay ("Mot.") at 3–4 (ECF No. 30).) And in May 2016,

---

[1] That action has since been terminated. The Superior Court of California in the County of Los Angeles dismissed the action on forum non-conveniens and personal jurisdiction grounds. In August 2016, AFF withdrew its appeal of the dismissal. (Mot. at 3–4.)

AFF commenced the underlying action, alleging that the Gordons fraudulently transferred the Shares and any proceeds thereof (together, the "Assets") to hinder AFF's efforts in satisfying the Judgment.

## II. The Underlying Action

The gravamen of AFF's complaint is that the Gordons used their brokerage accounts at City National Bank to "fraudulently convey assets in order to frustrate AFF's ability to enforce the Judgment it [] obtain[ed] in the Connecticut Action," and to perpetrate a "scheme to defraud AFF and avoid paying the Judgment." (Compl. ¶¶ 47, 49.)

Defendants move to stay this action pending final resolution of the Connecticut Action. Because the focal point of the Appeal is whether the lender's rights under the loan from which Sheldon and GGI purportedly defaulted were properly assigned to AFF, Defendants contend that this Court should "act in comity with Connecticut law and observe" (Mot. at 10) the stay instituted in the Connecticut Action until the appellate court "determine[s] important threshold issues" that may "conclusively preclude AFF's claims asserted here." (Mot. at 7.)

AFF counters that a stay is "neither necessary nor appropriate" because this action involves issues and claims that are materially different from those alleged in the Connecticut Action. (See Memo. of Law in Opposition to Defendants' Motion to Stay ("Opp.") at 1 (ECF No. 26).) AFF contends that it is not trying "to enforce the Judgment in violation of the appellate stay, or to coerce Mr. Gordon to satisfy a judgment that Connecticut law forbids from enforcing." (Opp. at 10.) Rather, in this action, AFF seeks a separate judgment unwinding the fraudulent transfers of the Assets between the Gordons and unidentified third parties to "ensure that Sheldon's assets are not put out of" its reach. (Opp. at 10.)

3

DISCUSSION

I.  Standard

As an initial matter, the parties disagree on the standard that governs requests to stay a federal action in favor of a pending state proceeding. AFF maintains that this Court is bound by a four-factor test:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

See Hayes v. City University of New York, 503 F. Supp. 946, 962 (S.D.N.Y. 1980); Chevron Corp. v. Donziger, 37 F. Supp. 3d 653, 657 (S.D.N.Y. 2014).

By contrast, the Gordons contend that a seven-factor test controls this Court's analysis:

> (1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of the parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay.

See Van Wagner Enters., L.L.C. v. Brown, 367 F. Supp. 2d 530, 531 (S.D.N.Y. 2005).

AFF's four-factor test has been utilized primarily in situations where a party seeks to stay the enforcement of "an interlocutory order or final judgment [that] grants, dissolves, or denies an injunction" issued by a federal court pending an appeal of that court's order or judgment. Fed. R. Civ. P. 62(c); Hayes, 503 F. Supp. at 962 (invoking FRCP 62(c) after defendants moved to stay the action pending an appeal of the district court's injunction); Mohammed v. Reno, 309 F.3d 95, 100 (2d Cir. 2002) (applying the standard for "stay of an order of a district court"). Those factors are inapposite to the facts of this action, which involves (i) a monetary judgment, and (ii) consideration of whether this Court's jurisdiction over this case will

4

interfere with an appeal of a similar but separate action pending in state court.

The discretionary seven-factor test proffered by the Gordons is more appropriate in situations where a district court considers "stay[ing] federal proceedings to allow resolution of a similar cause of action pending in state court." Van Wagner Enters., 367 F. Supp. 2d at 531 (applying the seven factors in granting stay) (internal quotation marks and citation omitted); Giulini v. Blessing, 654 F.2d 189, 193 (2d Cir. 1981); De Carvalhosa v. Lindgren, 546 F. Supp. 228, 230 (S.D.N.Y. 1982). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Burton v. Exxon Corp., 536 F. Supp. 617, 623 (S.D.N.Y. 1982).

II. Analysis

Federal courts have "the virtually unflagging obligation . . . to exercise the jurisdiction given them," absent the "circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818–19 (1976). The "mere pendency of a state proceeding with identical facts does not entitle a federal court to dismiss an action over which it has mandatory subject matter jurisdiction except in specific circumstances." Koncelik v. Town of East Hampton, 781 F. Supp. 152, 156 (E.D.N.Y. 1991).

A. Nature of the Connecticut Action and the Underlying Action

The underlying action involves claims arising solely from the New York Debtor and Creditor Law ("DCL")—namely, DCL §§ 273 and 276 and their subparts, which are designed to invalidate conveyances of assets made without fair consideration, to avoid satisfying a judgment, or to avoid paying creditors. Indeed, one of the "underlying purpose[s] of DCL §

5

273-a" is to "prevent defendants from liquidating their assets in contemplation of an adverse judgment." Grace v. Bank Leumi Trust Co. of NY, 443 F.3d 180, 189 (S.D.N.Y. 2006).

Defendants attack the legitimacy of this action on the basis that AFF is not a creditor under the DCL, and therefore has no "claim" against the Gordons. The Connecticut court will determine whether AFF is in fact a creditor under the loan documents. The Gordons therefore contend a stay is appropriate.

But under the DCL's broad definition of the term "creditor," AFF is a creditor notwithstanding the Connecticut court's review of AFF's status under the loan documents. Section 270 of the DCL provides that a creditor is any "person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.Y.D.C.L. § 270. "Relevant here, a 'contingent' claim is one which has not accrued and which is dependent on some future event that may never happen." Trafalgar Power, Inc. v. Aetna Life Ins. Co., 131 F. Supp. 2d 341, 347 (N.D.N.Y. 2001). Indeed, even if AFF had "not recovered judgment" at the time of the alleged fraudulent transfers alleged in this action, AFF could have become a creditor as early "as of the time [its] claim accru[ed]" in the Connecticut Action. United States v. Watts, 786 F.3d 152, 163 (2d Cir. 2015). Therefore, while the Appeal centers on the question of whether AFF received a valid assignment of rights from the original lender, the material issue in this action is whether AFF has a "contingent" claim.

Here, AFF has sufficiently alleged that it is a creditor under the DCL. Former v. Yogel, 50 F. Supp. 2d 227, 247 (S.D.N.Y. 1999) (under the DCL, a party need only "allege its status as a creditor of th[e] person or entity and the existence of an antecedent debt owed to the plaintiff."). The Connecticut court rendered a judgment in AFF's favor. And even if AFF's creditor status is under review, its pending claims against Sheldon and GGI are "clearly

6

'contingent' claims.  The <u>very existence</u> of those []claims establishes [AFF] as a creditor under the Debtor and Creditor Law."  <u>Trafalgar</u>, 131 F. Supp. 2d at 347 (emphasis added).  That fact is amplified by five years of litigation involving AFF's claims against Sheldon and GGI.  (<u>See</u> Mot. at 5.)  The litigation culminated with the Connecticut court finding, in a 29-page opinion, that AFF was a creditor entitled to judgment under the loan documents.[2]  And, because the DCL was designed to combat the evasive tactics employed by debtors to avoid paying their creditors, especially where, as here, the debtor has attacked the validity of the judgment, the "creditor need not wait until his claim has been reduced to final judgment, but may proceed to protect himself against any action by the defendant seeking to make the judgment a nullity."  <u>Trafalgar</u>, 131 F. Supp. 2d at 348 (quoting <u>Herring-Curtiss, Co. v. Curtiss</u>, 140 Misc. 857, 858 (N.Y. Sup. Ct. 1931)).

    B.  <u>Application of the Discretionary Factors</u>

The seven factors pertinent to a district court's decision to stay an action weigh in favor of denying Defendants' motion.  The first two factors—comity and judicial efficiency—weigh against a stay in view of the fact that the term "creditor"—the key issue underlying both actions—is defined differently under New York law and Connecticut law.  While the Connecticut court presumably will analyze the purported assignment of rights and the loan documents under Connecticut law, this Court is better suited to interpret and apply New York law in the context of the DCL.  Here, AFF is a creditor possessing a "contingent" claim and therefore may exhaust the remedies available under the DCL to "know with certainty that [it can] rely upon property of [its] debtors, even if situated in another jurisdiction."  <u>Eclaire Advisor Ltd.</u>

---

[2]    This Court notes that the Gordons' attempt to discredit AFF's status as a creditor is belied by the allegation that Sheldon and GGI sought to negotiate a forbearance agreement regarding the loan with AFF shortly after the Connecticut Action was commenced.  (<u>See</u> Compl. ¶¶ 16–17.)

7

as Trustee to Daewoo Int'l (America) Corp. Creditor Trust v. Daewoo Engin. & Constr. Co., Ltd., 375 F. Supp. 2d 257, 268 (S.D.N.Y. 2005).

The Gordons contend that this action is an "improper end-run around" of the Connecticut court stay. But AFF is considered a creditor under the DCL by virtue of its contingent claims, and "is entitled to maintain a separate action for alleged violations of [the DCL]." Trafalgar, 131 F. Supp. 2d at 348.

The third factor—adequacy and extent of relief available in the alternative forum—also militates against a stay because the Connecticut court cannot claw back or halt certain fraudulent conveyances designed to avoid repaying Sheldon and GGI's creditors. While the main issue underlying the Appeal is whether AFF properly received an assignment of rights under the loan documents, answering that question will not address the relief requested here: a "judgment unwinding the fraudulent transfers from Sheldon to Christine." (Opp. at 10.)

The fourth, fifth, and sixth factors also support this Court's exercise of jurisdiction. The parties in this action and the Connecticut Action are not identical. The addition of Christine Gordon in this action underscores a material distinction between the two cases. Here, Christine allegedly transferred assets that she received from Sheldon in furtherance of a fraudulent conveyance scheme. In the Connecticut Action, she has no alleged role.

The likelihood of prompt disposition in the Connecticut Action is also uncertain. The Gordons contend that the "final determination of the Connecticut Action would likely be short" because the appeal has been fully briefed and oral argument is scheduled for January 5, 2017. (Mot. at 10; ECF No. 34.) But no one—not even the Gordons—can predict with certainty when the appeal will actually be decided despite the fact that oral argument is imminent.

Further, the inconvenience on the parties, counsel, and witnesses in this action—

8

compared to those in the Connecticut Action—is minimal. Many of the parties central to this action—namely Sheldon Gordon and AFF—have been embroiled in a multi-year action in Connecticut. And at least for some period until August 2016, they litigated against each other in California. (See Mot. at 3–4.) A New York action—especially after the dismissal of the California action—will pose no more an inconvenience on the Gordons than what they have already endured in Connecticut. Moreover, while this Court appreciates the hardships that could potentially arise from Mr. Gordon's advanced age, the Gordons travel regularly to New York for business. (See Opp. at 11.)

Finally, the seventh factor—possibility of prejudice to a party as a result of the stay—is perhaps one of the most important factors underlying this Court's decision to exercise jurisdiction. The Gordons claim that AFF "is already holding security in excess of $3.3 million that applies . . . to its claims" in the Connecticut Action. (Mot. at 10.) But that amount ignores the actual balance of the Judgment which, if affirmed by the appellate court, would exceed $4.4 million. Without securing assets on which it can enforce the entire Judgment, AFF will be left with an incomplete measure of relief.

Under a stay, potential assets from which AFF could satisfy the Judgment may be siphoned to unidentified parties and put out of AFF's reach. If the Connecticut court rules in AFF's favor, at that point AFF likely will have little to no recourse. This is precisely the risk—and prejudice—that the DCL was designed to minimize. Having said that, this Court is cautious of the overreach that can result from the remedies available under the DCL, and will carefully exercise its jurisdiction to "go no further . . . than to restrain the defendant from disposing of the property alleged to be fraudulently conveyed." Herring-Curtiss, 140 Misc. at 858.

C.  Abstention Doctrine

"Further support for staying or abstaining from considering [AFF's] claims at this time is found in the doctrine of judicial deference known as the Colorado River doctrine."  Rose v. Village of Upper Nyack, N.Y., 669 F. Supp. 654, 657–58 (S.D.N.Y. 1987).  Under such doctrine, "a federal court may dismiss or stay a suit pending before it in the interest of wise judicial administration where there is a concurrent state proceeding."  Rose, 669 F. Supp. at 658 (citing Colorado River, 424 U.S. at 817 (1976)).  Colorado River and its progeny provide six factors for consideration: (1) the assumption of jurisdiction over any res or property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the concurrent forums obtained jurisdiction; (5) the source of the applicable law; and (6) the adequacy of procedures in the state court to protect the federal plaintiff's rights.  Wiggin & Co. v. Ampton Invs., Inc., 66 F. Supp. 2d 549, 551–52 (S.D.N.Y. 1999).

The threshold question preceding an analysis of the aforementioned factors is whether this action is parallel to or concurrent with the Connecticut Action.  See Mazuma Holding Corp. v. Bethke, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014).  "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same . . . parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."  Mazuma, 1 F. Supp. 3d at 20.  Further, "[a]ny doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction."  Mazuma, 1 F. Supp. 3d at 20.

Here, the identities of the parties are substantially the same, but the issues and relief sought in each action, while similar, are meaningfully different.  As this Court has

previously discussed, the issues and relief sought in the Connecticut Action are limited to the rights assigned under the loan documents. But this action deals solely with the issue of whether the Gordons, as presumed debtors of AFF, have fraudulently placed their Assets out of AFF's reach for the purpose of avoiding enforcement of any judgment, including one from the Connecticut Action. Put another way, even if the Connecticut Action is resolved in favor of AFF, that result will not "dispose of all claims presented in the federal case." Mazuma, 1 F. Supp. 3d at 20.

Because this action is parallel to or concurrent with the Connecticut Action, this Court need not analyze the factors espoused by Colorado River, and instead will uphold its "virtually unflagging obligation" to exercise jurisdiction. See Sheerbonnet Ltd. v. American Express Bank, Ltd., 17 F.3d 46, 49–50 (2d Cir. 1994) (declining to analyze Colorado River factors where state and federal proceedings were not concurrent).

III.   Order of Attachment

Prior to oral argument on the underlying motion to stay, AFF filed a pre-motion conference letter seeking leave to file a motion for an order of attachment under CPLR §§ 6201(1) and 6211 to seize the Gordons' assets located in New York. Under New York law, "[a]ttachment is recognized as an extraordinary remedy." Intelligent Digital Systems, LLC v. Visual Mgmt. Sys., Inc., 683 F. Supp. 2d 278, 287 (E.D.N.Y. 2010). "[R]elief is discretionary and since attachment is a harsh remedy, the court must exercise care in its application." Musket Corp. v. PDVSA Petroleo S.A., 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007).

In view of this Court's decision to exercise jurisdiction, AFF's request for leave to file a motion for an order of attachment is granted. The parties are directed to file their respective briefs pursuant to the following schedule:

- AFF shall file its motion by January 13, 2017;
- Defendants shall file their response by January 27, 2017; and
- AFF shall file its reply by February 3, 2017.

This Court will resolve the motion on submission.

## CONCLUSION

For the foregoing reasons, in its informed discretion, this Court denies Defendants' motion to stay. However, if Defendants post a bond of $1,500,000 with the Clerk of Court by January 11, 2017, this Court will stay this action pending the resolution of the Connecticut Action.

The Clerk of Court is directed to terminate the motions pending at ECF Nos. 22 and 25.

Dated: December 29, 2016
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.