UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------
                                                :
                                                :
AMERICAN FIRST FEDERAL, INC.,                   :
                                                :
                Plaintiff,                      :    16cv3958
                                                :
              -against-                         :    OPINION & ORDER
                                                :
SHELDON M. GORDON, *et al.*,                    :
                                                :
                Defendants.                     :
                                                :
------------------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiff American First Federal, Inc. ("AFF") moves for leave to amend its complaint to add a claim for attorneys' fees in this fraudulent conveyance action. For the reasons that follow, AFF's motion is granted in part and denied in part.

## BACKGROUND

        In 2006, Sheldon Gordon and his company, Gordon Group Investments ("GGI"), executed a business loan agreement and a promissory note with a lender (the "2006 Note"). (Decl. of D'Mark Mick, ECF No. 82 ("Mick Decl."), ¶ 2.) In 2008, Gordon executed a second Promissory Note (the "2008 Note"), which amended and restated the 2006 Note. (Mick Decl. ¶ 3.) Then, in 2009, Gordon and the lender entered into a Note Modification Agreement (the "Note Modification"), followed by a forbearance modification agreement in 2010 (the "Forbearance Modification Agreement," and collectively with the 2006 Note, the 2008 Note, and the Note Modification, the "Loan" or "Loan Documents"). (Mick Decl. ¶ 3.) In late 2010, the original lender assigned and transferred the Loan to AFF. (Mick Decl. ¶ 5.) Thereafter, in May 2011, Gordon and GGI defaulted on the Loan, and AFF commenced an action in Connecticut

Superior Court for breach of the Loan Documents (the "Connecticut Action"). (Mick Decl. ¶ 5; Am. First Fed., Inc. v. Gordon, Case No. FST-CV-11-6009881-S (Conn. Super. Ct. 2011).)

After the Connecticut Action was filed, Gordon sought to negotiate a forbearance agreement with AFF. (Mick Decl. ¶ 7.) AFF demanded additional collateral in the form of Gordon's 132,826 partnership units (the "Shares") in the Taubman Realty Group Limited Partnership ("Taubman") in exchange for an extension of the Loan's maturity date. (Mick Decl. ¶ 7.) Gordon refused to pledge the Shares, citing their strict transfer restrictions and the adverse tax consequences that he would suffer if they were secured as collateral. (Mick Decl. ¶ 7.) As a result, no forbearance agreement was executed. (Mick Decl. ¶ 7.)

Next, AFF petitioned the Connecticut court for a writ of attachment to secure the Shares, but Taubman refused to recognize the writ. (Mick Decl. ¶ 8.) AFF claims that after Gordon learned of AFF's efforts to attach the Shares, he sought to transfer them out of AFF's reach. (Mick Decl. ¶¶ 8–11.)[1]

On July 10, 2015, the Connecticut court entered a judgment in favor of AFF in the amount of approximately $4.4 million, including pre-judgment interest (the "Judgment"). (Mick Decl. ¶ 14; Connecticut Action Dkt. No. 293.) In August 2015, a supplemental judgment awarded AFF post-judgment interest and attorneys' fees in the Connecticut Action (the "Supplemental Judgment"). (Mick Decl. ¶ 14.)

Thereafter, AFF sought to prevent Gordon from secreting his assets and frustrating collection of the Judgment. To that end, in October 2015, AFF initiated an action in California state court alleging that the Gordon family fraudulently transferred their assets (the "California Action").[2] (Mick Decl. ¶ 19.) And in May 2016, AFF commenced this action,

---

[1] Those transfers formed the basis for AFF's fraudulent conveyance action in this Court.
[2] The Superior Court of California dismissed the action on forum non conveniens and personal jurisdiction

alleging that the Gordons fraudulently transferred the Shares and any proceeds thereof (together, the "Assets") to hinder AFF's efforts in satisfying the Judgment.

Meanwhile, in July 2015, Gordon and GGI appealed the Judgment, and in September 2015, AFF appealed the Supplemental Judgment, effectively staying enforcement of the Judgment. (Mick Decl. ¶ 14.) And in June 2017, the Connecticut appellate court affirmed both the Judgment and the Supplemental Judgment. (See Connecticut Action Dkt. Nos. 294 and 295.)

In September 2017, Gordon passed away, and Defendants informed AFF that they would satisfy the Judgment. (Vuotto Decl. ¶¶ 21–22.) On April 26, 2018, AFF advised this Court that the fraudulent transfer claims were resolved. (ECF No. 74.) Accordingly, the only issue remaining in this matter is whether AFF should be granted leave to amend its complaint to add claims for attorneys' fees incurred here and in the California Action. (Vuotto Decl. Ex. A ¶ 72.)

DISCUSSION

I. Legal Standard

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The "liberal standard set forth in Rule 15 . . . is consistent with our strong preference for resolving disputes on the merits." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) (quotation marks omitted). Thus,

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

---

grounds. In August 2016, AFF withdrew its appeal of the dismissal. (Decl. of Jonathan P. Vuotto, Esq., ECF No. 83 ("Vuotto Decl.") ¶ 6.) AFF claims it brought the action in California because Gordon had ties and interests there, but Defendants argue that AFF did so because AFF's counsel lived in California.

3

> party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); accord Flores v. Nieva, 2017 WL 899942, at *5 (S.D.N.Y. Mar. 6, 2017).

In addition, parts of AFF's motion may be better suited as a motion to supplement its complaint, rather than to amend. See Fed. R. Civ. P. 15(d). However, the standard for leave to supplement is essentially the same as for leave to amend: "Although language of Rule 15(d) is plainly permissive, we have held that '[a]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, [a Rule 15(d)] motion should be freely granted.'" Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, 898 F.3d 243, 256 (2d Cir. 2018) (quoting Quarantino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995)) (alteration in original).

II. Analysis

   A. Futility

"Leave to amend may properly be denied if the amendment would be futile." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 110 (2d Cir. 2015) (quotation marks omitted). Amending "will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). Moreover, a claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). As such, a pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim. Iqbal, 556 U.S. at 678 (citation omitted).

The crux of this dispute is whether AFF has a valid claim for attorneys' fees incurred here and in the California Action. More specifically, the question is whether AFF's proposed claims for attorneys' fees are barred by the merger/res judicata doctrines.

As a threshold issue, "[t]he parties' briefs assume that Connecticut state law governs this case, and such implied consent is . . . sufficient to establish the applicable choice of law." Trikona Advisers Ltd. v. Chugh, 846 F.3d 22, 31 (2d Cir. 2017) (quotation marks omitted) (ellipsis in original). Under Connecticut state law, merger doctrine and res judicata are examined under the Restatement of Judgments. See Lighthouse Landings, Inc. v. Conn. Light & Power Co., 15 A.3d 601, 616 (Conn. 2011). While the parties mostly agree that §§ 18, 24, and 25 Second Restatement of Judgments apply, AFF contends that its claims fit under the exceptions to the merger rule found in § 26 of the Restatement.

Under the Restatement, "[w]hen a valid and final personal judgment is rendered in favor of the plaintiff . . . [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment . . . ." Restatement (Second) of Judgments § 18 (Am. Law Inst. 1982) ("Restatement"). And,

> [w]hen a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such

5

considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement § 24 (citation omitted). Under this "transactional test," courts look at "the group of facts which is claimed to have brought about an unlawful injury to the plaintiff . . . and have noted that [e]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action." Lighthouse Landings, Inc., 15 A.3d at 616 (alterations in original) (quotation marks omitted).

Indeed, the rules of merger still apply even where the second action seeks "remedies or forms of relief not demanded in the first action." Restatement § 25. Thus,

> if a plaintiff who has recovered a judgment against a defendant in a certain amount becomes dissatisfied with his recovery and commences a second action to obtain increased damages, the court will hold him precluded; his claim has been merged in the judgment and may not be split. It is immaterial that in trying the first action he was not in possession of enough information about the damages, past or prospective, or that the damages turned out in fact to be unexpectedly large and in excess of the judgment.

Restatement § 25, cmt. c (citation omitted).

However, "[t]his general rule [of merger] is subject to the exception stated in § 26." Restatement § 18. Under § 26(1), the merger rule does not extinguish a claim, and part or all of the claim may continue in a second action, if:

> (a) [t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; . . . [or] (c) [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of . . . restrictions on [the court's] authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.

Restatement § 26(1)(a) & (c).[3] Indeed, because "[a] main purpose of the general rule stated in § 24 is to protect the defendant from being harassed by repetitive actions," § 24 is "not applicable where the defendant consents" to splitting the claim. Restatement § 26 cmt. a. And "[w]hen . . . formal barriers in fact existed [in the way of a litigant's presenting to a court the entire claim] and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first." Restatement § 26 cmt. c. These "formal barriers . . . may stem from limitations on the competency of the system of the courts . . . or from the persistence in the system of courts of older modes of procedure." Restatement § 26 cmt. c.

Defendants argue that any claims for attorneys' fees premised on the Loan Documents have merged into the Judgment and are barred. Defendants further argue that even if the claims for attorneys' fees have not merged into the Judgment, AFF's fee request is unreasonable. AFF counters that its claims for attorneys' fees are not barred under the merger doctrine or <u>res judicata</u> because (1) Defendants agreed in the Loan Documents to split claims for attorneys' fees (<u>see</u> § 26(1)(a)); (2) AFF never had an opportunity to fully and fairly prosecute its claims, because the Judgment was entered before the attorneys' fees at issue were incurred (<u>see</u> § 26(1)(c)); or (3) the merger doctrine sounds in equity and should not be applied here. In addition, AFF argues that Defendants bear the burden of demonstrating that AFF's fees are unreasonable and that, in any event, reasonableness is an issue of fact to be determined later.

"[T]here does not appear to be any definitive on point Connecticut authority as to the effect of the merger doctrine on attorneys['] fee provisions." <u>Feinstein v. Keenan</u>, 2013 WL

---

[3] The exceptions in § 26(1)(a) and (c) have been adopted by Connecticut courts. See <u>A.J. Masi Elec. Co. v. Marron & Sipe Bldg. & Contracting Corp.</u>, 574 A.2d 1323, 1324 (Conn. App. Ct. 1990) (§ 26(1)(a)); <u>Conn. Water Co. v. Beausoleil</u>, 526 A.2d 1329, 1335 (Conn. 1987) (§ 26(1)(c)).

5969137, at *4 (Conn. Super. Ct. Oct. 17, 2013). Thus, "determinations based on res judicata must be made in light of the particular facts of . . . each case in order to best promote the purposes of res judicata, which include promoting judicial economy, minimizing repetitive litigation, preventing inconsistent judgments and providing repose to parties." Barnett v. Conn. Light & Power Co., 900 F. Supp. 2d 224, 239 (D. Conn. 2012) (applying Connecticut law). At first blush, it would appear that AFF's attorneys' fees claims fall within the same transaction as the Connecticut Action. Cf. Feeney v. Licari, 516 N.Y.S.2d 265, 266 (N.Y. App. Div. 1987) (applying New York law, which employs the transactional test). Regardless, AFF's claim is not futile because of the § 26(1) exceptions.

1. Restatement Section 26(1)(a) Exception

To determine whether Defendants consented to AFF's splitting its claims for attorneys' fees, the Loan Documents govern. The 2006 Loan Agreement states:

> Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings . . . , appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

(Mick Decl. Ex. 1 at Gordon00152–53.) Similarly, the 2006 Note states:

> Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings . . ., and appeals. If not prohibited by applicable law, Borrower will also pay any court costs, in addition to all other sums provided by law.

(Mick Decl. Ex. 2 at 2.) Finally, the Forbearance Agreement states:

> Obligors agree to pay the Lender upon demand (a) an amount equal to any and all out-of-pocket costs or expenses (including legal fees (including allocable costs of

staff counsel) and disbursements) incurred or sustained by the Lender in connection with the preparation of this Agreement and all related matters and (b) from time to time after the Forbearance Termination Date, any and all out-of-pocket costs or expenses (including legal fees (including allocable costs of staff counsel) and disbursements and reasonable consulting, accounting, appraisal and other similar professional fees and expenses) hereafter incurred or sustained by the Lender in connection with the administration of credit extended by the Lender to the Borrower or the preservation of or enforcement of any rights of the Lender under this Agreement and the Loan Documents or in respect of any of Obligors' other obligations to the Lender.

(Mick Decl. Ex. 4 ¶ 10.)

The parties cite little case law to support their arguments regarding § 26(1)(a). AFF tethers its arguments to a footnote in <u>City Savings Bank of Bridgeport v. Miko</u>, 467 A.2d 929, 934 n.3 (Conn. App. Ct. 1983). In that case, defendants appealed an award to pay for attorneys' fees incurred by the plaintiff in connection with a motion for deficiency judgment after foreclosure. <u>Miko</u>, 467 A.2d at 931. The underlying note evidencing the indebtedness owed to the plaintiff contained an agreement to pay "reasonable attorneys' fees incurred in the collection of any sum due hereunder." <u>Miko</u>, 467 A.2d at 934 (quotation marks omitted). "The trial court found that [because] it was clear that the parties contemplated, and that plaintiffs intended, that the obligation concerning attorneys' fees continue until the debt was completely collected . . . , the obligation could extend beyond the judgment date" and thus did not merge into the judgment. <u>Miko</u>, 467 A.2d at 934 n.3. Notably, however, the Connecticut appellate court only discussed the trial court's holding with respect to consent in <u>dictum</u> and in a footnote—it did not rely on that reasoning in its holding that § 49-7 of the Connecticut General Statutes "permits attorneys' fees to be awarded in any proceeding for collection of the debt and that a deficiency judgment is such a proceeding." <u>Miko</u>, 967 A.2d at 934. Still, the trial court held that such language constituted consent, and the appellate court did not disturb that holding.

9

In addition, here, the Loan Documents expressly contemplate attorneys'-fee awards for "appeals, and any anticipated post-judgment collection services." (See, e.g., Mick Decl. Ex. 1 at Gordon00152–53.) Naturally, claims for attorneys' fees incurred to <u>collect</u> on the Judgment would be premature when it was not yet clear that the Judgment—if obtained—would not be satisfied. Accordingly, Defendants' consented to AFF's bringing attorneys' fee claims by separate suit. This holding fits squarely within the purpose of § 24, which "is to protect the defendant from being harassed by <u>repetitive actions</u>." Restatement § 26 cmt. a. Simply put, this is not a repetitive action—it is an action to collect contractually agreed upon attorneys' fees incurred while attempting to satisfy the Judgment.

2. <u>Restatement Section 26(1)(c) Exception</u>

With respect to whether formal barriers prevented AFF from bringing its current attorneys' fees claim during the Connecticut Action, AFF argues that they did because those costs had not yet been incurred. AFF pins its argument on <u>Miko</u> once again. There, after plaintiff cross-appealed the trial court's refusal to award counsel fees for post-deficiency-judgment services not yet performed, the Connecticut appellate court affirmed, holding that "[i]t is manifestly improper for the court to award fees for services which have not yet been performed and may never be performed at any time in the future." <u>Miko</u>, 467 A.2d at 935.

AFF's argument is also logical. The Loan Documents expressly contemplated Defendants' liability for attorneys' fees incurred in AFF's effort to collect on any judgment. It is unclear how AFF would have pursued fees to collect on the Judgment before the Judgment had been entered—<u>i.e.</u>, such fees would have been purely speculative and hypothetical. Indeed, this action and the California Action were not initiated until <u>after</u> entry of the Judgment. "It is true that <u>res judicata</u> will not bar a suit based upon legally significant acts occurring <u>after</u> the filing of

10

a prior suit that was itself based upon earlier acts." Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 113 (2d Cir. 2000) (emphasis in original).  In addition, while there is scant case law on point, other circuits have noted that "a critical predicate for applying [res judicata] is that the claimant shall have had a fair opportunity to advance all its 'same transaction' claims in a single unitary proceeding." Dionne v. Mayor & City Council of Balt., 40 F.3d 677, 683 (4th Cir. 1994) (citing Restatement § 26 cmt. c).  It defies logic and fairness to hold that AFF should have brought a claim for attorneys' fees to collect on a Judgment before it knew whether it would have to incur fees to collect on that Judgment.  Put another way, Defendants' argument contemplates that AFF should have assumed that Defendants would attempt to frustrate collection of the Judgment.

That said, the commentary to § 26(1)(c) indicates that the primary purpose of the exception is limited to the prevention of unfairness where a party could not have fully presented its claim in the first action due to either the limited jurisdiction of a system of courts or old modes of procedure, i.e., courts divided between law and equity.  Neither of those concerns are implicated here.

However, given that Connecticut appellate authority suggests that claims for yet-to-be-incurred attorneys' fees are impermissible and that the spirit of the exception seeks to prevent unfairness, this Court finds that the § 26(1)(c) exception applies.

3. Reasonableness

Finally, Defendants argue that, even if AFF's claims are not merged with the Judgment, they are still futile because the fee requests are not reasonable.  Specifically, Defendants argue that AFF was successful in neither litigation and brought both actions while

11

execution of the Judgment was stayed pending appeal. AFF counters that the burden of proving that attorneys' fees are unreasonable rests with Defendants.

As a threshold issue, attorneys' fees may only be awarded pursuant to statute or by contract or stipulation. See Brewster Park, LLC v. Berger, 14 A.3d 334, 337 (Conn. App. Ct. 2011). Here, AFF seeks attorneys' fees pursuant to the Loan Documents. The Loan Documents state that Defendants shall be liable for AFF's "attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for . . . appeals, and any anticipated post-judgment collection services." (Mick Decl. Ex. 1 at Gordon00152–53.)

With respect to fees incurred in this action, Defendants' argument is meritless. AFF's suit here was primarily one for fraudulent conveyance. In other words, AFF was attempting to prevent Defendants from secreting assets prior to the Judgment's execution. While this Court denied AFF's motion for a writ of attachment, the fraudulent conveyance claim was not meritless. Rather, it was mooted by Defendants' satisfaction of the Judgment—which may have been prompted by this action. In addition, any qualms over the reasonableness of the fees can be raised during the ensuing litigation. This Court cannot say as a matter of law that the requested fees are unreasonable, when a specific fee request has yet to be made.

However, the request for fees incurred in the California Action is unreasonable. The California Action was dismissed for lack of personal jurisdiction and on forum non conveniens grounds. It is absurd for AFF to expect attorneys' fees incurred litigating a meritless action. See Rhodes v. Davis, 2015 WL 1413413, at *1 (S.D.N.Y. Mar. 23, 2015) (awarding plaintiff attorneys' fees in a contract dispute but excluding attorneys' fees incurred litigating an unmeritorious ERISA claim); Bridgeport Harbour Place I, LLC v. Ganim, 30 A.3d 703, 748 (Conn. App. Ct. 2011) (explaining, in dictum, that trial court excluded expenses incurred

12

litigating unmeritorious claims from attorneys' fee award); In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 236 (2d Cir. 1987) (explaining that a lodestar analysis should not unduly weigh the risk of success because it would reward attorneys who bring dubious claims).

  B. Prejudice

"A litigant may be 'prejudiced' within the meaning of [Rule 15] if the new claim would: '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Pasternack v. Shrader, 863 F.3d 162, 174 (2d Cir. 2017) (quoting Block v. First Blood Assocs., 988 F.3d 944, 950 (2d Cir. 1993)). "Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Pasternack, 863 F.3d at 174 (alterations in original) (quotation marks omitted). "Nor can complaints of the time, effort and money . . . expended in litigating [the] matter, without more, constitute prejudice sufficient to warrant denial of leave to amend." Pasternack, 863 F.3d at 174 (alterations in original) (quotation marks omitted).

None of the concerns contemplated by Rule 15 apply here. The ensuing litigation will relate solely to attorneys' fees, which will require minimal effort on Defendants' part.

## CONCLUSION

For the foregoing reasons, AFF's motion is granted in part and denied in part. AFF may amend its complaint only with respect to attorneys' fees incurred in this action. It may not add claims for attorneys' fees in the California Action. AFF is directed to file its amended complaint by March 4, 2019. The Clerk of Court is directed to terminate the motion pending at ECF No. 81.

Dated: February 11, 2019
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.